UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| LINDA C. DICKERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 2:16-CV-75-SPM |
| | ) |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security (the "Commissioner"), denying the application of Plaintiff Linda C. Dickerson ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 10). Because I find reversible error in the Commissioner's assessment of the credibility of Plaintiff's subjective complaints, I will reverse and remand the case to the Commissioner for further proceedings.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 29, 2012, Plaintiff applied for DIB and a period of disability, alleging that she had been unable to work since November 9, 2012. (Tr. 310-11). On December 6, 2012, she applied for SSI, again alleging that she had been unable to work since November 9, 2012. (Tr. 312-16). She alleged disability based on herniated discs, swelling in her feet and legs, arthritis in her spine and foot, pain, fatigue, and depression. (Tr. 358). Her applications were initially denied. (Tr. 126, 138, 144-49). On March 11, 2013, Plaintiff filed a request for a hearing by an Administrative Law Judge ("ALJ"). (Tr. 142-43). On August 19, 2015, following two hearings, the ALJ found that Plaintiff was not under a "disability" as defined in the Act. (Tr. 7-26). On October 15, 2015, Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council. (Tr. 6). On September 6, 2016, the Appeals Council declined to review the case. (Tr. 1-5). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

At the time of the first hearing before the ALJ, on October 27, 2014, Plaintiff testified that she was 53 years old, was 5'4" tall, and weighed 250 pounds. (Tr. 32). She had worked in the past doing housekeeping and laundry at a nursing home for 25 years, which involved lifting 50 to 75 pounds at a time. (Tr. 33-34). She also worked as a home health aide for her boyfriend, helping him dress, bathe, shower, and do other tasks. (Tr. 35). Plaintiff testified that she stopped doing both jobs in 2012 because she had problems with leg swelling that made her unable to walk or work. (Tr. 33-35). Plaintiff also testified that she has hypertension that makes her legs swell every night and that sometimes the swelling causes her to be unable to walk without a walker; that she has daily headaches, that she sleeps all the time from her medicines, that her shoulders hurt and she cannot lift more than a gallon of milk without pain; that she is diabetic and has high blood

pressure; that she has back pain and lies around a lot to deal with it; and that she has depression and cries every week or so for a day or two. (Tr. 35-43). She takes care of her boyfriend's granddaughter and plays computer games during the day, though she cannot sit at the computer for very long. (Tr. 49-51). At the supplemental hearing on June 24, 2015, Plaintiff testified that she has tried to lose weight and has not been successful, that if she pushes herself and walks too far then her legs start swelling and she is down for several days, that she elevates her feet for about six hours between 8:00 a.m. and 5:00 p.m., and that her legs swell even when she is on diuretics. (Tr. 102-04).

With regard to Plaintiff's medical records, the Court accepts the facts as provided in Plaintiff's statement of facts and Defendant's response. The Court will address specific facts relevant to the issues presented by the parties' briefs, as needed, in the discussion section below.

## II. STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy

exists for him [or her], or whether he would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he or she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he or she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e), 416.920(e). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv),

404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, he or she is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

### III. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff met the insured status requirements of the Act through December 31, 2017; that she has not engaged in substantial gainful activity since November 9, 2012, the alleged onset date; and that Plaintiff had the following severe impairments: degenerative disc disease, hypertension, osteoarthritis of the right shoulder, diabetes, and morbid obesity. (Tr. 12-13). The ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 14). The ALJ found that Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she can lift up to 50 pounds occasionally but only lift/carry 10 pounds frequently. She can stand/walk 6 hours out of an 8-hour workday 3 hours at a time and sit 8 hours of an 8-hour workday 4 hours at a time. She is limited to frequent reaching with the right upper extremity and frequent bilateral operation of foot controls. She is limited to occasional

5

> climbing and crawling and frequent balancing, stooping, kneeling, and crouching. She is limited to occasional exposure to unprotected heights and no more than frequent exposure to moving mechanical parts.

(Tr. 14). At Step Four, the ALJ found that Plaintiff was not able to perform her past relevant work. (Tr. 18). However, at Step Five, relying on the testimony of a vocational expert, the ALJ found that Plaintiff was capable of performing other jobs that exist in significant numbers in the national economy, including representative occupations such as folding machine operator (unskilled, light), collator operator (unskilled, light), and garment sorter (unskilled, light). (Tr. 19). The ALJ concluded that Plaintiff had not been under a disability, as defined in the Act, from November 9, 2012, through August 19, 2015, the date of her decision. (Tr. 20).

## IV. DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds: (1) that the ALJ erred in determining that Plaintiff's anxiety and depression were not severe impairments, and (2) that the ALJ's RFC determination is not supported by substantial evidence.

### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence

6

presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B. The ALJ's Determination That Plaintiff's Depression and Anxiety Were Not Severe Impairments

Plaintiff's first argument is that the ALJ erred by determining that Plaintiff's depression and anxiety were not severe impairments. To be considered severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). *See also* Social Security Ruling (SSR) 96-3p, 1996 WL 374181, at *1 (July 2, 1996). Additionally, to support a finding of disability, a severe impairment must have lasted or must be expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), 404.1509, 416.909. "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). The Eighth Circuit has noted that "[s]everity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard, and [it has] upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing." *Id.* at 708 (citation omitted).

In determining the severity of a claimant's mental impairments at Step Two, the ALJ must use the "special technique" described in 20 C.F.R. §§ 404.1520a and 416.920a. The ALJ must first "evaluate [the claimant's] pertinent symptoms, signs, and laboratory findings to determine whether

[the claimant has] a medically determinable mental impairment(s)." 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1) (2011).[2] The ALJ "must then rate the degree of functional limitation resulting from the impairment(s)" in four broad functional areas: "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Id.* §§ 404.1520a(b)(2) & (c)(3), 416.920a(b)(2) & (c)(3). If the degree of limitation in the first three functional areas is rated as "none" or "mild" and the rating in the fourth area is "none," the ALJ "will generally conclude that [the claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." *Id.* §§ 404.1520a(d)(1) & 416.920a(d)(1).

The ALJ performed that analysis in this case. (Tr. 13). The ALJ found that Plaintiff did have medically determinable mental impairments of generalized anxiety disorder and major depressive order. (Tr. 13). In doing so, the ALJ discounted the February 2013 opinion of state agency consultant Mark Altomari, Ph.D., who opined that the medical evidence did not establish any medically determinable mental impairments; the ALJ reasoned that the more recent medical evidence did establish the existence of medically determinable mental impairments. (Tr. 17, 131). However, she found that those medically determinable impairments caused no more than mild limitations in activities of daily living; mild limitations in social functioning; mild limitations in concentration, persistence, or pace; and no episodes of decompensation. She therefore concluded that Plaintiff's anxiety and depression were not severe. (Tr. 13).

Plaintiff argues that the ALJ erred by evaluating the four broad functional areas to determine the severity of Plaintiff's mental impairments at Step Two. Plaintiff appears to be under

---

[2] The Court's references in this section are to the version of the regulations that was in effect as of the date of the ALJ's decision.

the mistaken impression that the four broad functional areas are relevant only at Step Three of the analysis, not at Step Two. However, as pointed out by the Commissioner, and as discussed above, the regulations expressly require the ALJ to evaluate these four broad functional areas in evaluating the severity of mental impairments at Step Two. Thus, the ALJ did not err by using this framework at Step Two.

Plaintiff also argues that ALJ's conclusion that Plaintiff's mental impairments were not severe is not supported by substantial evidence. The Court disagrees. As a preliminary matter, the Court notes that in both Plaintiff's Function Report and hearing testimony, Plaintiff's allegations were almost entirely related to physical rather than mental impairments. In her Function Report (completed in December 2012), when presented with a list of items and asked to circle those that were affected by her conditions, she indicated several physical limitations and indicated that she had problems "completing tasks" (a limitation that might be related to either physical or mental impairments), but she did not indicate that her conditions caused any problems with memory, concentration, understanding, or getting along with others. (Tr. 380). Although Plaintiff did report some problems with stress and difficulty remembering things, Plaintiff's description of her daily activities in her Function Report also did not suggest significant mental or social limitations, as she indicated that she wakes up her grandson for school, helps with homework, goes grocery shopping, and spends the day playing computer games and watching television with the kids or her boyfriend. (Tr. 13, 375-81). Similarly, in her testimony at the hearings before the ALJ in October 2014 and June 2015, Plaintiff described her physical limitations at length, but her only mention of mental symptoms was her testimony in October 2014 that she has anxiety and depression that cause her to cry when she thinks about the things she used to be able to do and can no longer do. (Tr. 42). She testified that this used to occur about once a month but now occurs

9

every week or so for a day or two. (Tr. 42-43). She did not report that her anxiety and depression limit her ability to do any of her daily activities, limit her ability to get along with others in social situations, or limit her memory, concentration, persistence, or pace. Plaintiff also testified that she takes care of her personal needs, stays with her boyfriend's three-year-old child while others in the home are away, and plays games and uses Facebook on the computer. (Tr. 43, 49-51, 106). She testified that her ability to perform these activities is limited by her physical impairments (for example, she cannot play games on the computer for more than ten minutes at a time because it hurts to sit), but she did not indicate that her daily activities are limited by mental impairments. The ALJ reasonably relied on Plaintiff's Function Report and testimony to determine that she had only mild limitations in activities of daily living; social functioning; and concentration, persistence, and pace. Moreover, there is no evidence that Plaintiff experienced any episodes of decompensation.

Additionally, there is little medical evidence to suggest that Plaintiff's diagnosed mental impairments imposed significant limitations on her ability to perform work activities. Plaintiff did at times report mental symptoms to her medical providers, including feeling stressed out, isolating herself, feeling depressed, and/or being easily irritated, and she was diagnosed with anxiety and depression and prescribed medication. (Tr. 558-59, 616-24, 684-86). However, the record suggests that Plaintiff's periods of significant mental symptoms were intermittent, were largely related to situational stressors such as family issues and financial problems, improved with treatment, and generally did not impose significant functional limitations. For example, in January 2013, Plaintiff reported feeling "very stressed out" and having "a lot of issues with the family," and she was prescribed lorazepam. (Tr. 558-59). However, she did not report mental health problems for the next nine months. In October, November, and December 2013, it was noted that she had mental

symptoms including depression and anxiety, being easily irritated, having a flat affect, and not wanting to be around people. (Tr. 616-24). However, at several visits in 2014, Plaintiff either did not report mental symptoms or had normal mental status examinations. (Tr. 580-81, 587-89, 608, 610, 612). In December 2014, Plaintiff reported feeling stressed, yelling, and having been depressed for "a few months," and she was referred for a psychiatric evaluation. (Tr. 681). At a psychiatric evaluation in January 2015, Plaintiff reported feeling stressed, anxious, depressed, and irritable; having suicidal ideations; feeling hopeless, not being able to be around people, and being unable to shut down her brain at night. (Tr. 684). She also reported stress related to her relationship with her boyfriend, her financial issues, and her employment problems. (Tr. 687). She had a depressed and anxious mood and was diagnosed with major depressive disorder, recurrent, severe, and generalized anxiety disorder; and she was assigned at Global Assessment of Functioning ("GAF") score of 52, indicating moderate symptoms or difficulties.[3] (Tr. 684, 687). However, she was also cooperative, her speech was brief and to the point, she was oriented, her thought processes were goal-directed, and her insight and judgment were fair. (Tr. 686). She was prescribed Cymbalta. (Tr. 687). Three months later, at an April 2015 appointment, Plaintiff had an appropriate mood and affect, was alert and cooperative, was able to articulate well with normal speech, and had a normal attention span and ability to concentrate. (Tr. 691-92). At an August 2015 visit, her mood was positive and her affect was bright, suggesting that treatment improved her condition. (Tr. 722).

---

[3] The Global Assessment of Functioning Scale (GAF) is a psychological assessment tool wherein an examiner is to "[c]onsider psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV), 32 (4th ed. 1994). A GAF of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *DSM-IV* 32.

Plaintiff argues that the GAF score of 52 in the record indicates that her mental impairments were severe. The ALJ expressly considered the GAF score, but found in light of the rest of the evidence that Plaintiff's mental impairments not severe. (Tr. 17). That decision was supported by the record. This GAF score was assigned on only one occasion, and as discussed above, there is no indication in the record that Plaintiff had moderate mental symptoms over any continuous twelve-month period. Moreover, the Eighth Circuit has noted that "GAF scores have no direct correlation to the severity standard used by the Commissioner." *Wright v. Colvin*, 789 F.3d 847, 855 (8th Cir. 2015).

The Court further notes that the only opinion evidence in the record—the opinion of state agency mental consultant Dr. Altomari that Plaintiff had no medically determinable mental impairments—is consistent with the finding that Plaintiff had no severe mental impairments. (Tr. 131). The ALJ reasonably gave this opinion little weight in light of subsequent evidence showing that Plaintiff did have medically determinable mental impairments. (Tr. 17).

In light of Plaintiff's minimal allegations of mental symptoms in her testimony and Function Report, Plaintiff's reported daily activities, Plaintiff's infrequent complaints of mental symptoms to her medical providers, the fact that Plaintiff's complaints appeared to be related to situational stressors, and the normal to mild mental status examination findings in the record, the ALJ's conclusion that Plaintiff's depression and anxiety were not severe impairments is supported by substantial evidence. *See, e.g.*, *Buckner v. Astrue*, 646 F.3d 549, 557 (8th Cir. 2011) (ALJ's finding that a claimant's diagnosed mental impairments were not severe was supported by the fact that the claimant had several normal psychological evaluations and made several visits to his provider where he did not raise concerns about his depression); *Dunahoo v. Apfel*, 241 F.3d 1033, 1039-40 (8th Cir. 2001) (ALJ's finding that depression was not a severe impairment was supported

in part by the ALJ's determination that her depression was due to a denial of food stamps and workers' compensation and was situational).

### C. The ALJ's RFC Assessment

Plaintiff's second argument is that the RFC determination—that Plaintiff could perform medium work with some additional limitations—is not supported by substantial evidence. A claimant's RFC is "the most a claimant can do despite her limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).

"Before determining a claimant's RFC, the ALJ first must evaluate the claimant's credibility." *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) (quotation marks omitted). When evaluating the credibility of a plaintiff's subjective complaints, the ALJ must consider several factors: "(1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints." *Moore*, 572 F.3d at 524 (citing *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008), and *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). "An ALJ who rejects subjective complaints must make an express credibility determination explaining the reason for discrediting the complaints.' *Moore*, 572 F.3d at 524 (quoting *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000)). The ALJ is not required to discuss each of these factors in relation to a claimant, and the ALJ is entitled to discount a claimant's

complaints if they are inconsistent with the evidence as a whole. *See Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008). The court "will defer to the ALJ's credibility finding if the ALJ 'explicitly discredits a claimant's testimony and gives a good reason for doing so.'" *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011) (quoting *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010)).

Although Plaintiff does not expressly include a challenge to the credibility analysis in her enumerated list of issues, she does challenge as erroneous some of the statements made by the ALJ regarding Plaintiff's credibility. Where an ALJ's credibility analysis is based in part on erroneous inferences from the record, the Court should reverse "if the record does not weigh so heavily against the claimant's credibility that the ALJ would have necessarily disbelieved the claimant absent the errors drawn from the record." *Chaney v. Colv*in, 812 F.3d 672, 677 (8th Cir. 2016) (citing *Ford v. Astrue*, 518 F.3d 979, 983 (8th Cir. 2008)). Thus, the Court has undertaken a review of the ALJ's credibility analysis as a whole.

The central issue in this case is the credibility of Plaintiff's assertion that she has leg swelling (particularly after exertion) and back pain that make it difficult for her to sit, stand, lift, and walk. In her decision, the ALJ acknowledged the relevant credibility factors, and she expressly found Plaintiff's complaints only partially credible based on an assessment of those factors. (Tr. 15-17). However, after review of the ALJ's decision and the record as a whole, the Court finds that remand is required because several of the statements made by the ALJ in the credibility analysis appear to be based on erroneous inferences not supported by the record, and because the record as a whole does not weigh so heavily against Plaintiff's credibility that the Court can say that the ALJ would have necessarily disbelieved Plaintiff absent those errors.

With regard to Plaintiff's daily activities, the ALJ discounted Plaintiff's complaints in part due to her "extensive activities of daily living," including living in a busy household, watching a

14

young child during the day while the child's mother works, performing self-care tasks with some trouble bending, helping to prepare meals daily, doing laundry daily, going shopping once or twice a week, watching television, and playing games on the computer. (Tr. 17). After close review of Plaintiff's accounts of her daily activities, however, it is unclear to the Court why the ALJ found Plaintiff's activities of daily living to be "extensive" or to be in any way inconsistent with her allegations of disabling pain and leg swelling. Plaintiff testified that she spends about six hours between 8:00 a.m. and 5:00 p.m. lying or sitting down with her legs elevated. (Tr. 53, 103). Although Plaintiff testified that she takes care of her partner's granddaughter during the day, she also testified that she does not do a lot for the child; that the child dresses herself; that Plaintiff does not pick up the child; that the child plays in the front room with her while they watch television or read; and that she never takes the child to the playground or anywhere like that. (Tr. 49-50, 106-07). Although Plaintiff testified that she plays games on a desktop computer, she also testified that she can only do so for about ten minutes at a time and that it hurts too much to sit for 30 minutes. (Tr. 51). Although she testified that she goes shopping once or twice a week, she also testified that someone drives her there and that, when she is shopping, she always has to have either a motorized cart or a cart to lean on. (Tr. 60). She also testified that if she tries to walk through Wal-Mart without a cart, sometimes her legs swell up so bad that she has more trouble walking. (Tr. 105). Although she reported that she tries to do a load of laundry every day, she also reported that everyone throws their clothes into the washer and she starts it, that she needs to sit down in front of the dryer to fold clothes, and that she needs her family members to carry the baskets to their rooms after she folds the clothes. (Tr. 377).

Plaintiff's reported daily activities are actually quite limited and are not inconsistent with her allegations of pain and swelling that require her to spend most of the day sitting or lying down

15

with her legs elevated. They certainly do not support the ALJ's finding that Plaintiff can stand/walk for six hours in an eight-hour workday, lift up to 50 pounds, and frequently stoop, kneel, and crouch. Moreover, although the Eighth Circuit has recognized that its cases "send mixed signals about the significance of a claimant's daily activities in evaluating claims of disabling pain," *Clevenger v. Soc. Sec. Admin.*, 567 F.3d 971, 976 (8th Cir. 2009), it has also noted that "it is well-settled law that "a claimant need not prove she is bedridden or completely helpless to be found disabled." *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005) (internal quotation marks omitted). The Eighth Circuit has often found it improper for an ALJ to rely on very limited activities such as the ones Plaintiff performs to discredit complaints of pain and inability to perform full-time work. *See, e.g.*, *Reed v. Barnhart*, 399 F.3d 917, 923-24 (8th Cir. 2005) (reversing where the ALJ gave undue weight to Plaintiff's ability to perform daily activities such as laundry and shopping without considering the specific limitations she reported in her ability to do those activities; stating, "this court has repeatedly observed that the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work") (quotation marks omitted); *Ford*, 518 F.3d at 983 (finding the ALJ erred in concluding that the plaintiff's ability to wash a few dishes, iron one or two pieces of clothing, make three or four meals a weak, and read were inconsistent with complaints of pain).

As additional evidence of Plaintiff's extensive daily activities, the ALJ apparently interpreted a statement in the "Social History" section of Plaintiff's January 2015 psychiatric evaluation form to mean that Plaintiff was engaging in activities such as dancing, camping, fishing, and playing tennis in January 2015. (Tr. 17, 686). However, such an interpretation is not supported by the record. The record as a whole reflects that as of January 2015, and throughout the disability period, Plaintiff was regularly complaining of leg swelling and chronic leg and back pain that

significantly limited her physical abilities. (Tr. 684). As discussed above, Plaintiff has consistently indicated that that she spends her days watching television and playing computer games, and that she rarely goes anywhere besides occasionally to Wal-Mart to shop (where she must lean on a cart for support). In sum, a closer reading of the January 2015 evaluation form in light of the record as a whole shows that Plaintiff's reference to dancing, camping, fishing, and playing tennis was a description of her past interests and activities rather than her current ones. Thus, this was not a proper consideration in the credibility analysis.

With regard to Plaintiff's work history, the ALJ noted that Plaintiff claimed to be unable to work due to back pain and swelling, but stated that Plaintiff's "legal issues provide an alternative explanation for her lack of employment as she reports she was 'arrested for lying.'" (Tr. 17). The ALJ was relying on a statement in the "Social History" section of Plaintiff's January 2015 psychiatric evaluation form stating, "Legal Issues: arrested for lying." (Tr. 686). The ALJ's consideration of this factor is not supported by the record. The Court has found no indication in the record of when Plaintiff's arrest occurred, nor is there any indication in the record that the arrest was in any way related to Plaintiff's lack of employment. Moreover, the evidence that does clearly relate to work history actually strongly *supports* the credibility of Plaintiff's claim that her leg swelling caused her to stop working. Plaintiff testified that she worked at the same nursing home for 25 years, at first doing housekeeping and then moving to laundry. (Tr. 33, 367-68). In 2011, she went on medical leave for about two months due to her leg swelling, and her doctor released her to return to work because she told him she was going to lose her job if she did not. (Tr. 57). She "was able to push herself" and go back to work for about six to eight months. (Tr. 57). However, in 2012, the swelling got to the point where she could not walk, and she went on medical leave again. (Tr. 34, 57-58). She was dismissed because she was unable to come back to

17

work. (Tr. 34). She testified that she did not apply for unemployment, because she did not want to lie and say she was seeking employment when she could not. (Tr. 35). Plaintiff also testified that for several years prior to November 2012, she worked two hours a day (not continuously) helping her disabled boyfriend and being paid by the state, but her leg swelling was so bad that she could not get out of bed to keep doing it, so that job ended. (Tr. 35, 58). This solid work history supports the credibility of Plaintiff's assertion that she had significant leg swelling and pain that caused her to be unable to work. *See Harris v. Sec'y of Dept. of Health &Human Servs.*, 959 F.2d 723, 726 (8th Cir. 1992) (finding "the ALJ's skepticism regarding [the plaintiff's] work record is wholly unfounded" and that the plaintiff's record of working full-time for several years for the same employer until she was injured "rather than casting doubt on her credibility, supports it"); *Dugan v. Astrue*, No. 6:08-CV-06112, 2010 WL 306978, at *4 (W.D. Ark. Jan. 26, 2010) (remanding for further consideration of credibility of allegations of pain in part because the ALJ "did not consider Plaintiff's nineteen-year work history and the fact that such a solid work history *supports* her claims of disability").

With respect to the dosage, effectiveness, and side effects of medications, the ALJ noted that Plaintiff's "blood pressure has been well-controlled when she is taking medications and following dietary and exercise recommendations." (Tr. 16). However, as Plaintiff points out, the records the ALJ cited to support that proposition (and other records) show that even when Plaintiff was taking medications, she was often diagnosed with uncontrolled hypertension and her blood pressure readings were often in a range that indicated hypertension. (Tr. 16, 581, 584-86, 588, 590, 616, 623, 644-46, 689-92). Moreover, it does not appear that the ALJ considered the fact that Plaintiff has been unable to continue some of her medications due to side effects. (Tr. 583).

The ALJ also noted that Plaintiff had shown "some non-compliance with medical recommendations." (Tr. 16). A claimant's failure to comply with treatment recommendations is a proper consideration in the credibility analysis. *See Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001). However, the records the ALJ cited in support of her conclusion do not actually show non-compliance. Some of them appear to simply be treatment notes recording which medications Plaintiff was and was not taking at particular times, which is unsurprising given that Plaintiff's doctors stopped and started numerous medications during the alleged disability period. (Tr. 608, 611, 694, 696). Another cited record cited indicates that Plaintiff was out of refills due to her inability to afford an office visit or her medication. (Tr. 498). The Eighth Circuit has recognized that a lack of sufficient financial resources may justify noncompliance with prescribed treatment in some cases. *See Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004). However, despite the considerable evidence of financial difficulty in the record, the ALJ did not discuss that as a possible reason for this noncompliance.

The Court acknowledges that the ALJ did properly consider some of the relevant factors that undermine the credibility of Plaintiff's complaints—most notably, the objective evidence in the record showing mild to normal objective findings with regard to Plaintiff's back problems and edema during the relevant period. However, it is well established that "the ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence." *Halverson v. Astrue*, 600 F.3d 922, 931-32 (8th Cir. 2010). In light of the fact that many aspects of the credibility analysis do not appear to be supported by the record, and the fact that the evidence as a whole does not weigh so heavily against Plaintiff's subjective complaints that the ALJ would necessarily have disbelieved Plaintiff absent the ALJ's erroneous inferences from the record, the Court finds that remand is required. *See Ford*, 518 F.3d at 982-83 (remanding for

further consideration where the ALJ gave some good reasons for discounting Plaintiff's credibility but also gave reasons not supported by the record, relied on inconsistencies that were not actually inconsistencies, and relied on Plaintiff's account of limited daily activities that were not actually inconsistent with her complaints of pain; reasoning that "[a]fter careful consideration of the record in this case, we cannot say that it weighs so heavily against [the plaintiff's] credibility that the ALJ would necessarily have disbelieved her absent the erroneous inferences that he drew from the record"); *Brosnahan v. Barnhart*, 336 F.3d 671, 677-78 (8th Cir. 2003) (remanding where the ALJ gave several reasons for discounting the plaintiff's credibility that were not supported by the record). On remand, the ALJ should conduct a new credibility analysis that takes into account Plaintiff's actual reported daily activities, her work history, the effectiveness and side effects of her medication, her compliance with medical treatment, and all of the other relevant factors.

Because the credibility analysis will likely affect the ALJ's RFC finding, the Court need not address Plaintiff's other specific arguments related to the RFC.

V. **CONCLUSION**

For the reasons set forth above, the Court finds that the ALJ's assessment of the credibility of Plaintiff's subjective complaints is not supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **REVERSED** and that this case is **REMANDED** under 42 U.S.C. § 1383(c)(3) and Sentence Four of 42 U.S.C. § 405(g) or reconsideration and further proceedings consistent with this opinion.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 16th day of March, 2018.